GISKAN SOLOTAROFF ANDERSON & STEWART LLP
11 Broadway, Suite 2150
New York, New York 10004
(212) 500-5106
Jason Solotaroff (JS 5739)
Amanda Masters (AM 6721)
*Attorneys for Plaintiff*

**11 CIV 4670**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

CAROLYN JOHNSON,

               Plaintiff,

        -against-

FORDHAM UNIVERSITY and ANTHONY CIORRA

            Defendants.

-------------------------------------------------------------------X

Civ. No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

     Plaintiff Carolyn Johnson, by and through her attorneys, Giskan Solotaroff Anderson & Stewart LLP, alleges the following:

## NATURE OF THIS ACTION

     1.     Plaintiff brings this employment discrimination action against her former employer, Fordham University, ("Fordham"), and her former supervisor, Anthony Ciorra, ("Ciorra") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York City Administrative Code, §8-107 (collectively, the "New York Human Rights Law").

     2.     Plaintiff seeks compensatory and punitive damages, liquidated damages, emotional distress damages, attorneys' fees, and other appropriate relief under Title VII and the New York City Human Rights Law.

## THE PARTIES

3.     Plaintiff Dr. Carolyn Johnson, a former Assistant Dean at Fordham University's Graduate School of Religion and Religious Education ("GSRRE"), resides at 23 Ann Boulevard, Chestnut Ridge, New York, 10977, and is a female citizen of the United States.

4.     Defendant Fordham University ("Fordham") is a not-for-profit corporation organized under the laws of New York, and is a 501(c)(3) tax exempt organization. Fordham is an independent university in the Jesuit tradition, established in 1841, with more than $1,000,000,000.00 in total assets reported to the IRS in 2009. Defendant maintains offices in New York located at three campuses: Rose Hill Campus Bronx, New York 10458, Lincoln Center Campus New York, New York 10023, and Westchester Campus West Harrison, New York 10604.

5.     Defendant Anthony Ciorra was, at all times relevant to the complaint, the Dean of the Graduate School of Religion and Religious Education, a graduate school of Fordham University. The Graduate School of Religion and Religious Education is located at the Rose Hill Campus Bronx, and Ciorra's primary place of business at the time relevant to the complaint was Keating Hall 303, 441 East Fordham Road, Bronx, NY 10459. Upon information and belief, Defendant Anthony Ciorra resides at 334 West 87th St, Apartment 6A, New York, New York 10024-2615.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. §§ 1331, 1343. This Court may assert supplemental jurisdiction over the state law claims as authorized by 28 U.S.C. § 1367 (a).

7.     Venue properly lies within this judicial district as Defendant maintains corporate

offices within this judicial district and the acts alleged herein took place primarily within this

judicial district.

8.     Dr. Johnson timely filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") and received a right-to-sue letter dated June 6, 2011.

Accordingly, she has complied with the procedural requirements under Title VII.

## STATEMENT OF FACTS

### Plaintiff's Initial Experiences Of Discriminatory Treatment

9.     The GSRRE has approximately 12 full time faculty, approximately 13 adjunct

faculty, a Dean, two Assistant Deans, 1.5 secretaries, and approximately 214 students.

10.     Plaintiff was well-qualified for the position of Assistant Dean of GSRRE.

11.     Plaintiff received both her undergraduate degree in English Literature and her

Masters in Religion and Religious Education from Fordham University.  She received her

Masters degree from GSRRE.

12.     In 2009, Plaintiff obtained a Doctorate of Education in Religion and Education,

Philosophy and Social Sciences from Teachers College, Columbia University.

13.     In November of 2009, Plaintiff applied for the position of Assistant Dean at

Fordham University's GSRRE.  She was interviewed in multiple rounds, by eight faculty,

administration, and staff of GSRRE.

14.     Plaintiff was told by Defendant Ciorra during the interview process, which was

collectively run by other faculty and administrators, that she would serve with another Assistant

Dean, Patrick Holt, who lacked a Ph.D. and other graduate school experience. Plaintiff was told

that she and Mr. Holt would be equals reporting to Defendant Ciorra, but that they would have

distinct areas of responsibility based on their qualifications, with her qualifications being superior.

15.     Upon information and belief, Holt had only been working in his position for approximately six months when Plaintiff joined GSRRE.

16.     Upon information and belief, Holt began working in GSRRE after having performed poorly in another Fordham graduate program as Associate Dean at the College of Liberal Studies at Fordham's former Tarrytown campus, and then Fordham's Westchester campus.

17.     Plaintiff was presented with a detailed written job description by Ciorra at the second interview with faculty and staff, which stated that one of her primary areas of responsibility would be admissions. She was also told that Holt had been overseeing the Doctorate of Ministry program, the PhD in Religious Education program, and the Distance Learning program, but that the programs had not been doing well under Holt and her credentials made her more suited to it and she would be taking those over.

18.     Plaintiff was offered and accepted the job of Assistant Dean at Fordham University's GSRRE and began her employment on or about February 16, 2010.

19.     Plaintiff was told upon her first day of work, by Holt, that her areas would actually be the less significant Student Services and Operations (including Orientation, Schedules, International Students Program, Banner, Summer, and Quadrivium (a newsletter), whereas Holt would work on the areas of Academic Administration and Development (including DMin./Ph.D/RE (the Doctorate of Ministry and PhD in Religious Education program), Westchester, Distance Learning, and the Website).  Plaintiff was told that both she and Holt

4

would be working jointly on Admissions, Student and Advisory Boards, and Student/Faculty Relations.

20.    Defendant Ciorra confirmed to Plaintiff that her duties would be as Holt explained them to her, rather than as they had been explained during the hiring process.

21.    Defendants subjected Plaintiff to different terms and conditions of employment than Holt, a similarly-situated male employee.

22.    On Plaintiff's first day of work, February 16, 2010, it became clear that Defendant Ciorra did not regard Plaintiff and Holt as equals, but rather held Plaintiff in lower regard than Holt, because she was a woman.

23.    Defendant Ciorra assigned Plaintiff on her first day to a small windowless office which contained the shared office printer and therefore had a great deal of foot traffic from her colleagues; whereas, Mr. Holt was assigned to a large windowed private office.

24.    Defendant Ciorra gave Plaintiff secretarial and other administrative tasks rather than substantive work, and isolated and excluded her from matters which she had been told would be the core aspects of her job.

25.    On her first day, Plaintiff was given secretarial work to do. Plaintiff was instructed by Holt to input stenographic revisions to a manual.

26.    Plaintiff asked Defendant Ciorra for clarification whether a typing task was the manner in which he wished to use her time and skills, and Ciorra insisted that she undertake the typing tasks.

27.    Defendant Ciorra failed to include Plaintiff on substantive projects and relegated her to secretarial tasks over the course of the next four months.

28.     Despite the fact that Plaintiff had been told she would be engaged in admissions work, Holt blocked her from doing any of the admission work, and Defendant Ciorra allowed this to continue.

29.     During that time, Plaintiff offered to take on more substantive work: she offered to create and manage a direct mail campaign to promote all of the school's programs, she made great efforts to successfully advertise and promote the school's programs, and she organized and ran the 2010 GSRRE graduation ceremony.

30.     However, despite these efforts, Defendant Ciorra repeatedly made clear that he preferred that her male colleague Holt to do the substantive work.

31.     Defendant Ciorra was overly strict with Plaintiff regarding her comings and goings, even when she had pre-planned absences for meetings, or health concerns, and even when she had already obtained permission for absences. Defendant frequently berated Plaintiff for attending appointments and meetings outside the office.

32.     Defendant Ciorra allowed Holt to come and go as he pleased, work flexible hours, and set his own hours. Defendant did not berate or challenge Holt when he missed appointments and meetings, or made his own schedule outside of the office.

33.     Defendant Ciorra curtailed Plaintiff from engaging in substantive tasks, even when she was the staff person with appropriate experience and training to undertake them, even after she had obtained permission to do them, and repeatedly excused Plaintiff from meetings directly relevant to her tasks.

34.     Defendant Ciorra had Holt run projects for which Holt had insufficient experience and for which he had proven himself unskilled.

35.     For example, Holt was charged with student recruitment and retention at the Westchester Campus, and was expected to grow the program there. He began with approximately 23 enrolled students and ended with none or nearly none. The program withered under his direction.

36.     Defendant Ciorra at various times, often in front of other staff, engaged in hostile and abusive behavior towards Plaintiff, screaming uncontrollably for some alleged error, in order to humiliate and degrade Plaintiff in front of her peers.

37.     Defendant Ciorra did not subject Holt to similar in hostile and abusive behavior, public tirades or punishments.

### Plaintiff's Initial Complaints And Inquiries Regarding Her Mistreatment

38.     In a conversation with a Fordham Human Resources ("HR") Manager Deborah Adwokat, approximately one week into her period of employment, Plaintiff was warned that Defendant Ciorra notoriously disliked working with women, a fact which was known to the administration of Fordham.

39.     Upon information and belief, Fordham has received multiple complaints from women who were mistreated by Defendant Ciorra during the years he worked at GSRRE, yet no disciplinary or remedial steps were taken by the University prior to or during Plaintiff's employment to protect women or stop his abusive behavior.

40.     In or about mid-April 2010, after enduring different and worse terms and conditions of employment, and disparagement by Defendant Ciorra for many weeks, Plaintiff contacted the Director of HR, Michael Mineo, to complain.

41.     Mineo and other staff quickly advised Plaintiff that they were not surprised to hear a woman complaining of mistreatment by Defendant Ciorra, given past complaints they had received from women about Defendant Ciorra.

42.     Deborah Lugo of Employee Relations and other HR staff advised Plaintiff to attempt to apply for other positions at Fordham to get out of the grasp of Defendant Ciorra, and they encouraged Plaintiff to report her concerns to Stephen Freedman, the Vice President for Academic Affairs.

43.     After HR advised Plaintiff to apply for other positions, Plaintiff applied for Vice President of Mission and Ministry with Fordham.

44.     Angela Cioffi, Director of Labor and Employee Relations, then told Plaintiff she had to wait for six months before she could apply for an administrative position within Fordham, and the only internal move she would be allowed to take would be to a faculty position. Cioffi encouraged Plaintiff to apply for a Visiting Professor position. Plaintiff rescinded her application for Vice President of Mission and Ministry with Fordham based on the advice of HR.

45.     On or about April 23, 2010, Plaintiff did make a formal complaint to Freedman, concerning the different, humiliating, and denigrating treatment she had received from Defendant Ciorra because she is female.

46.     Plaintiff informed Defendant Ciorra that she wanted to continue at her post at GSRRE, while applying for the visiting professorship at GSRRE.

47.     On or about May 10, 2010, Plaintiff followed the advice of HR and applied for another internal position. Plaintiff applied for a Visiting Professor in Religion and Religious Education position in the GSRRE.

## Defendants Retaliate Against Plaintiff and Terminate Her Employment

48.    Plaintiff feared retaliation and requested that her complaint to HR and Freedman remain confidential.

49.    Upon information and belief, Defendant Ciorra nonetheless learned of her complaint, and increased his hostility toward her after her complaint.

50.    After Plaintiff complained to HR, Defendant Ciorra was increasingly hostile to Johnson, yelling at her in front of staff, excluding her from meetings, and falsely accusing her of not showing up for other meetings without notice, and abruptly shouting orders at her.

51.    Upon information and belief, Defendant Ciorra decided to replace Plaintiff with Patrick Maguire after learning of her complaint to HR.

52.    Defendant Ciorra began to state in staff meetings that Mr. Maguire would be replacing Plaintiff with regard to special events and orientation.

53.    Defendant Ciorra excluded Plaintiff from a meeting for summer hires that she had organized, on merely a few minutes notice.  Defendant Ciorra then told the students they would not be working with Plaintiff, but rather with Mr. Maguire.

54.    In early June 2010, Plaintiff advised Freeman that she was being retaliated against for her complaint, and was being increasingly excluded, humiliated and targeted by Defendant Ciorra.  Rather than conduct an investigation, Freeman reported the matter to EEO.

55.    On or about June 2, 2010, Ellen Fahey-Smith, a member of Freedman's staff, reported the matter to EEO.  Plaintiff was fearful of retaliation, but at Fahey-Smith's insistence, Plaintiff reported the complaint to EEO on or about June 9, 2010.

56.    Upon information and belief, Defendant Ciorra became aware of Plaintiff's complaint to EEO regarding retaliation on or about June 2 to June 6, 2010.

57.     On or about June 6, 2010, Defendant Ciorra emailed Plaintiff and other GSRRE staff that he was not feeling well and would likely not be in the office.  Communication between Plaintiff and Defendant Ciorra became even more strained.

58.     On or about June 9, 2010, Defendant Ciorra informed Plaintiff that she would not be chosen for the Visiting Professorship position she had applied for, and that she should now leave her current position.

59.     Plaintiff was shocked at being told to leave her position, but she continued to perform her job.

60.     At the suggestion of HR, Plaintiff then also applied for two other Assistant Deanships, in Business and Liberal Studies.

61.     On or about June 10, 2010, a day on which, as Ciorra knew, Plaintiff had already planned to be at a meeting on campus, Ciorra demanded that Plaintiff immediately place all of her files containing her planning for the Fall student orientation on his desk.   Upon information and belief, Defendant Ciorra, Holt and GSRRE staff met with Plaintiff's replacement that day, and that was the sole purpose for which he demanded that she turn over all of her files immediately.

62.     On or about June 15, 2010, Defendant Ciorra asked Plaintiff via email to meet with him in his office at 10 a.m. June 16, 2010.  Plaintiff initially responded that she would, but subsequently asked to meet by phone because she was having complications arising from a medical treatment she had received. Plaintiff sent Defendant Ciorra a doctor's note by fax pertaining to the medical treatment she had received.

63.     On June 16, 2010, Defendant Ciorra called Plaintiff in the morning and fired her over the telephone. Defendant Ciorra told her Fordham would ship her belongings to her and she need not come to the office again.

64.     Plaintiff's replacement was male.

65.     Plaintiff's replacement was Mr. Maguire.

66.     Fordham did not return the possessions she left in her office, nor did they invite her to retrieve them. Given the hostility she had experienced in the office, Plaintiff expected that they would simply be mailed to her; however, that did not happen for months.

67.     On or about June 21, 2010, Plaintiff was formally informed that she would not be hired for the Visiting Professorship in RE that she had applied for.

68.     Plaintiff retained a lawyer and her lawyer contacted Fordham, and then the attorney for Fordham, to discuss potential claims.

69.     Plaintiff meanwhile met with Roger Van Allen, the Director of Development for Fordham, to network and discuss the Liberal Studies Assistant Deanship. Van Allen initially expressed that he wanted to help Plaintiff secure a position at Fordham.

70.     Plaintiff told Van Allen about the treatment she received from Defendant Ciorra, and the fact that she was let go. Van Allen was understanding and stated that he knew another woman who had complained of mistreatment by Defendant Ciorra. Van Allen suggested to Plaintiff that she may have legal remedies. Plaintiff agreed with Van Allen, and stated that she was working with "legal" at Fordham.

71.     Upon information and belief, Van Allen was instructed or felt intimidated to cease his efforts to help Plaintiff.

72.     Plaintiff was never called in for an interview for the Assistant Dean position in Liberal Studies, despite the fact that the job was posted repeatedly.

73.     Approximately two months after applying, Plaintiff learned she would not be hired for the Assistant Deanships position in Liberal Studies.

74.     Likewise, Plaintiff was never interviewed for the Assistant Dean position in the Business department.  Upon information and belief, neither the Liberal Studies nor the Business position has been filled.

75.     Plaintiff also applied for the Helen Hamlyn Scholar in International Humanitarian Affairs position at Fordham, which was another Administrative job. Plaintiff applied a week or so after losing her position.

76.     Plaintiff was interviewed, but not hired for the Helen Hamlyn Scholar position. This position remains open, and posted on Fordham's website.

77.     Plaintiff has attempted to continue her career by applying for positions within and outside of Fordham, and upon information and belief, Defendant Ciorra and other Fordham administrators have influenced decision-makers to deny her positions.

78.     Upon information and belief, a letter signed or otherwise approved by multiple members of Fordham faculty protesting Plaintiff's mistreatment was presented to Ciorra and the Provost after Plaintiff was fired.

79.     Upon information and belief, subsequent to that letter's transmission to the Provost, Defendant Ciorra agreed that he would be stepping down from his position as Dean and leaving Fordham.

80.     Upon information and belief, Defendant Ciorra has left the employment of Fordham and his last day of employment was on or about July 1, 2011.

### Defendants' Unlawful Detention

81.     On or about August 4, 2010, Plaintiff visited the campus as an invited guest for a meeting unrelated to GSRRE.

82.     Plaintiff had many legitimate reasons, and the right, to be on campus.

83.     Plaintiff is an alumnus of Fordham, a donor, a former employee of WFUV radio on campus, a former employee of Fordham, has two siblings who are alumni of Fordham, and has many business and personal relationships on campus. Alumni are invited to campus, free to use the libraries and cafes, attend alumni and University events, and furthermore, Plaintiff was engaged in a job search and networking on campus after being fired.

84.     After her meeting on campus, at approximately 6:30 or 6:45 Plaintiff exited a university shuttle bus.  As she exited, she observed a person pointing her out to Fordham security guards.

85.     The person pointing her out to guards appeared to be Defendant Ciorra.

86.     After she was pointed out, the guards approached her as she walked toward her car.  A guard named Thomas Caymitte stopped her and asked her loudly, in full view of the shuttle bus riders and passers-by, if she used to work at Fordham, and then instructed her to get in the security van.

87.     Plaintiff was embarrassed, and the guard proceeded to drive her away and then detained her near a security booth, where they were stopped by another security guard in a van. The guards questioned her, and informed her that she had been banned from campus.

88.     Plaintiff had never been advised that she was "banned" until she was detained by security.

89.     After approximately 15 minutes of detention, Plaintiff was released.

90.    As a result of the discrimination alleged herein by Defendants, Plaintiff has suffered damages.

## FIRST CAUSE OF ACTION

### Gender Discrimination In Violation of Title VII Against Fordham University

91.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

92.    Defendant Fordham discriminated against Ms. Johnson on the basis of her gender in the terms and conditions of her employment, in violation of Title VII, by treating her differently from and less favorably than similarly situated employees, and by terminating her employment and in failing to hire her for other positions for which she was qualified.

93.    As a direct and proximate result of the discrimination engaged in by Defendant Fordham, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

94.    As a direct and proximate result of Defendant Fordham's' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

95.    Defendant Fordham's discriminatory actions in violation of Title VII were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### Retaliation In Violation of Title VII Against Fordham University

96.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

97.    Plaintiff complained of unlawful employment practices by informing Fordham HR, EEO, employees and managers that Defendant Ciorra was discriminating against her on the basis of her sex, and by making a complaint to HR that was forwarded to Fordham EEO.  Such activities are protected under § 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

98.    Following such actions, Plaintiff was subjected to more aggressive disparagement, eventual termination by Defendants Ciorra and Fordham, and she was not hired by the University for other positions for which she was qualified.  These actions constitute retaliation in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3.

99.    Accordingly, Defendant Fordham violated Plaintiff's rights protected by § 704 of Title VII of the Civil Rights Act of 1964, as amended. Defendant Fordham's retaliatory practices described above have caused Plaintiff harm, including economic loss and emotional distress.

100.   Defendant Fordham's retaliatory actions in violation of Title VII were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive damages.

101.   As a direct and proximate result of the retaliation engaged in by Defendant Fordham, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she in entitled to an award of monetary damages and other relief.

102.    As a direct and proximate result of Defendant Fordham's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

### THIRD CAUSE OF ACTION

### Gender Discrimination
### In Violation of the New York City Human Rights Law

103.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

104.    Defendants discriminated against Ms. Johnson in the terms of her employment on the basis of her gender in violation of the New York City Human Rights Law by treating her differently from and less favorably than a similarly situated employee who was male, and by terminating her employment and failing to hire her for other positions for which she was qualified.

105.    As a result of the discrimination engaged in by Defendants, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she in entitled to an award of monetary damages and other relief.

106.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

107.    Defendants' discriminatory actions in violation of the New York City Human Rights Law were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Ms. Johnson's civil rights, for which she is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION

### Retaliation In Violation of the
### New York City Human Rights Law

108.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

109.    Plaintiff complained of unlawful employment practices by informing Fordham HR, EEO, employees and managers that there were problems with unequal treatment by Defendant Ciorra, and by making a complaint to HR which was forwarded to Fordham EEO. Such activities are protected under New York City Admin. Code § 8-107 et seq.

110.    Following such actions, Plaintiff was subjected to more aggressive disparagement, eventual termination by Defendants Ciorra and Fordham, and she was not re-hired by the University for other positions for which she was qualified.  These actions constitute retaliation in violation of New York City Admin. Code § 8-107 et seq.

111.    Defendants' discriminatory practices described above have caused Plaintiff harm, including economic loss and emotional distress.

112.    Defendants' discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive damages.

113.  As a direct and proximate result of the discrimination engaged in by Defendants, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she in entitled to an award of monetary damages and other relief.

114.  As a direct and proximate result of Defendants's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

## FIFTH CAUSE OF ACTION

### False Imprisonment

115.  Plaintiff repeats and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

116.  Defendants subjected Plaintiff to false imprisonment.

117.  Defendants intended to and did confine Plaintiff, when her name was placed on the "banned" list, when Defendant Ciorra sought to have her detained by security if she entered campus, when a Fordham employee pointed her out to security, and when security employees detained her, placed her in their vehicle, and detained her outside of their vehicle.

118.  Plaintiff was conscious of the confinement.

119.  Plaintiff did not consent to the confinement.

120.  Plaintiff's confinement was not otherwise privileged, and there was no probable cause to confine her.

121.    Defendant's actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive damages.

122.    As a direct and proximate result of the false imprisonment engaged in by Defendants, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

**WHEREFORE**, Plaintiff demands that judgment be entered in her favor and that the Court order and award her the following relief against defendant:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the City of New York;

B.    An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discrimination, or a comparable position in another department, as well as take such affirmative action as necessary to ensure that the effects of these unlawful employment practices are eliminated and do not affect Plaintiff's employment;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for her humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;

D.    An award of damages for any and all monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest.

E.   An award of punitive damages.

F.   Attorneys fees;

G.   Costs and disbursements;

H.   Interest; and

I.   Such other and further relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury as to all issues in the above matter.

Dated: New York, New York
       July 5, 2011

Respectfully submitted,

GISKAN SOLOTAROFF
ANDERSON & STEWART LLP

By:_____

Amanda Masters (AM 6721)
amasters@gslawny.com
Jason L. Solotaroff (JS 5739)
jsolotaroff@gslawny.com
11 Broadway
New York, New York 10004
(212) 847-8315

*Attorneys for Plaintiff*